IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00641-MEH

GILLIAN DUNNING,

    Plaintiff,

v.

JEFFERSON COUNTY SCHOOL DISTRICT R-1, and
BRIAN CONNER, in his individual capacity,

    Defendants.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Gillian Dunning ("Dunning") asserts one claim against Defendant Jefferson County School District R-1 ("School District") for breach of contract and one claim against both the School District and Defendant Brian Conner ("Conner") (together, "Defendants") for due process violations. ECF 25. Defendants have filed the present motion to dismiss ("Motion"), seeking dismissal of Plaintiff's second claim against them, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 26 at 2. As set forth below, this Court **grants** the Motion, dismisses the second claim with prejudice, and dismisses the remainder of this case without prejudice to refile in state court.

## FACTUAL BACKGROUND

The following are factual allegations (as opposed to legal conclusions, bare assertions, or conclusory allegations) made by Dunning in her First Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The School District and the Jeffco Educational Support Professionals Association ("JESPA") are parties to a Collective Bargaining Agreement ("CBA"). ECF 25-1. The CBA affords members of the bargaining unit, such as Dunning at the time of her employment, certain job protections. *Id*. at 6; ECF 25 at 3. Under the CBA, the School District is limited to four ways to terminate the employment of a member of the bargaining unit. ECF 25 at 4. It may terminate a member of the bargaining unit by showing (1) "just cause" for a misconduct termination, (2) poor work performance, (3) a bona fide reduction-in-force, or (4) lack of work or other legitimate reasons. *Id.*

Dunning was hired as a Restorative Practices Liaison ("RPL") at Oberon Middle School ("Oberon"), a member of the School District, for the 2019-20 school year. ECF 25 at 5. Conner is (and was at all times of the events alleged) the principal at Oberon. *Id*.

In the spring of 2020, amidst concerns of the COVID-19 pandemic, many in the School District expressed financial fears. *Id*. at 6. After consideration, the School District advised principals to "contemplate two budget scenarios: Plan A, under which there would be no cuts to employee ranks at the school level; and Plan B, under which there would very likely be reductions-in-force that impacted schools." *Id*. at 6-7.

During this time, Conner completed Oberon's budget, which contemplated $244,570 more than the 2019-20 budget. *Id*. at 6. Conner met with Diane Hamilton, a financial adviser, to review Oberon's budget for the 2020-21 school year. *Id*. at 6. Hamilton expressed concerns over declining student enrollment, which would lead to less funding for Oberon. *Id*. Hamilton encouraged Conner to save existing employees by budgeting less for substitute teachers, leaving unfilled positions vacant, and "avoid making . . . firing decisions until August 2020." *Id*.

Conner first notified Dunning of her termination over the phone on May 5, 2020. *Id*. at 7. Conner explained Oberon's 2020-21 financial budget could not fund her position. *Id*. The RPL role and her employment were to be terminated at the end of the 2019-20 school year. *Id*. On or around May 7, 2020, Conner again notified Dunning of her termination via letter, explaining once more that the budget drove the decision. *Id*. at 8. Conner's termination decision was approved by the School District's Board of Education ("Board") in June of 2020. *Id*. When the School District approved her termination, it did not allege (1) any misconduct, (2) less than satisfactory work performance, or (3) reductions in its workforce. *Id.* at 4.

During the summer of 2020 and throughout the 2020-21 school year, the School District and Oberon adopted financial plans. *Id*. at 10. On June 17, 2020, the Board adopted a budget similar to Plan A which "avoided staff cuts at the school level." *Id*. In response to this, JESPA filed a grievance on Dunning's behalf, concerned she was not terminated for "legitimate reasons." *Id*. In accordance with the CBA, three grievance hearings took place. *Id.* at 2. The Board upheld its prior approval of Dunning's termination. *Id.*

Dunning brings her due process violation claim against both Defendants pursuant to 42 U.S.C. § 1983. ECF 25 at 12. She alleges that the School District denied her an opportunity to be heard and did not conduct a meaningful review of her termination. *Id.* at 13. Dunning also alleges that Conner deprived her of a protected property interest in her continued employment without adequate notice, an opportunity to be heard, or a pre-deprivation hearing. *Id.* Dunning requests relief of actual economic damages, compensatory damages, attorney fees, costs of this action, appropriate equitable relief, and other relief as justice requires. *Id.*

## **LEGAL STANDARDS**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 680. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## DISCUSSION

Defendants seek dismissal of Plaintiff's second claim for failure to state a due process violation. Mot. at 2. In support, Defendants argue that Conner is entitled to qualified immunity, and that no municipal liability may attach for the School District. *Id.* at 6, 9, 15.

### I.      Due Process, Qualified immunity, and Municipal Liability

Plaintiff's First Amended Complaint alleges insufficient pretermination and post-termination hearings in violation of the Fourteenth Amendment. ECF 25 at 13. Dunning points to the absence of (1) notice in pretermination procedures, (2) meaningful review by the School District's Board of Education in post-termination procedures, and (3) an opportunity to be heard in her termination proceedings. *Id.* at 4, 7-10, 12 "The Due Process Clause of the Fourteenth Amendment prohibits states from depriving 'any person of life, liberty, or property, without due process of law.'" *Doe v. Univ. of Denver*, No. 17-cv-01962-PAB-KMT, 2019 WL 3943858, at *10 (D. Colo. Aug. 20, 2019) (quoting U.S. Const. amend. XIV, § 1), *reversed on other grounds*, 1 F.4th 822 (10th Cir. 2021). "A court must 'examine procedural due process

5

questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Messeri v. DiStefano*, 480 F. Supp. 3d 1157, 1163 (D. Colo. 2020) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (alterations in original).

Defendants argue Connor is entitled to qualified immunity because Dunning fails to allege a plausible due process violation. Public officials like Defendants are entitled to qualified immunity so long as their conduct does not violate another's clearly established constitutional rights. *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). "When a defendant raises the qualified-immunity defense, the plaintiff must . . . establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id*. Therefore, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

Defendants also argue that if Plaintiff does not plead an underlying constitutional violation, Plaintiff cannot adequately maintain a Section 1983 claim against the School District. Mot. at 15. To allege a claim against a municipality like the School District, Plaintiff must state "(1) official policy or custom, (2) that caused a constitutional injury, and (3) requisite state of mind." *Heidel v. Mazzola*, 851 F. App'x 837, 840 (10th Cir. 2021) (citing *Schneider v. City of*

*Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)); *see also DeAnzona v. City and Cnty. of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000) (finding that a plaintiff must allege an underlying constitutional violation to hold a municipality liable for the conduct of its employee). If the plaintiff does not properly allege a constitutional injury, the inquiry ends and the claims against the municipality must be dismissed. *See Nelson v. Skehan*, 386 F. App'x 783, 786 (10th Cir. 2010).

## II.     Whether Plaintiff Properly Pleads a Violation of Due Process

Dunning alleges that she was not given adequate due process before being deprived of a protected property interest in her employment. ECF 25 at 13. "Where the government has deprived an individual of a protected interest, we must weigh the following factors to determine whether that individual received due process: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *McDonald v. Wise*, 769 F.3d 1202, 1213 (10th Cir. 2014) (quoting *Mathews*, 424 U.S. at 333). "The only question is the level of process to which he was entitled to protect that property interest." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009).

Even when there is only "a limited conversation between an employee and his supervisor immediately prior to the employee's termination," the court may find sufficient process. *Id*. (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989)). "[P]retermination warnings and an opportunity for a face-to-face meeting with supervisors, . . . and a conversation between an employee and his supervisor immediately prior to the employee's termination, [are] sufficient

7

to satisfy constitutional requirements." *West v. Grand Cty.*, 967 F.2d 362, 367 (10th Cir. 1992). Additionally, pretermination hearings need not be formal when there is an expectation of a post-termination hearing. *Id.* (quoting *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)). They need only serve as "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545–46.

Here, Dunning's First Amended Complaint fails to establish constitutionally deficient pretermination due process. As pleaded, Conner notified Dunning of her termination over the phone nearly a month before the Board formally approved the termination. ECF 25 at 2, 7. He told her that Oberon's budget for the next year included "huge cuts" that forced him to eliminate Dunning's position. *Id.* They had a five-minute conversation. *Id.* Thereafter, Dunning requested that the decision be in writing. *Id.* at 8. After that, Conner provided Dunning with an official notice letter which reiterated the reasons for the termination and stated that "[i]f you have any questions, please contact . . . Manager of Employment Services." ECF 26-2. After the termination decision was approved by the Board, the School District and Dunning participated in all three grievance proceedings. ECF 25 at 2. Dunning had ample time and opportunity to make her concerns known.

Plaintiff argues, however, that despite these opportunities she could not meaningfully defend her property interest because she did not know the details of Oberon's budget when Conner notified her of her termination. Resp. at 8, 9. However, she cites no case law which would find that Connor was required to provide the details of the 2020-21 budget to Dunning. To the contrary, the case law supports a much lower standard for pretermination hearings. "'All that is necessary' to satisfy due process 'is that the procedures be tailored, in light of the decision to

8

be made, to 'the capacities and circumstances of those who are to be heard,' to insure that they are given a meaningful opportunity to present their case." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1241 (10th Cir. 2001) (quoting *Mathews*, 424 U.S. at 349). The Court could find no decision that mandated production to the employee of budget estimates or similar materials used in a termination decision.

As for Dunning's post-termination process, she alleges that the grievance proceedings following the Board's approval of her termination did not cure the otherwise insufficient pretermination procedures. Resp. at 10. Plaintiff points the Court to two potential defects here. *Id.* First, the arbitrator in the grievance proceedings did not have the authority to enforce Plaintiff's constitutional rights. *Id.* Second, Plaintiff alleges she bore the burden of proof at her arbitration hearing. *Id.* Plaintiff cites no authority, however, for the Court to find that due process requires (1) an adjudicator have the authority to enforce a party's constitutional rights, or (2) that the School District alone must bear the burden of proof in the hearing. To the contrary, many circuit courts including the Tenth Circuit have held that "grievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process." *E.g., Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998). Moreover, absent special circumstances, an employee's due process rights are not violated when a government employer requires he or she bear the burden of proof at post-termination hearings. *Benavidez v. City of Albuquerque*, 101 F.3d 620, 627–28 (10th Cir. 1996).

Therefore, Plaintiff has not alleged a violation of her due process rights in either the pretermination or post-termination procedures in this case. Adequately alleging neither a violation of a clearly established right nor a constitutional injury, the Court finds that Plaintiff's Complaint cannot withstand qualified immunity for Conner and, thus, as noted above, cannot

support municipal liability for the School District. The Court dismisses Plaintiff's second claim against Defendants.

## III. Leave to Amend

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Okla.*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ¶ 15.10 & n. 2 (1983)). However, "[a]t least outside of the pro se context, when a litigant fails to put the district court on adequate notice—in a legally cognizable manner—of his request for leave to amend, then the district court will not be faulted for failing to grant leave to amend." *Doe v. Heil*, 533 F. App'x 831, 847 (10th Cir. 2013). It is within the Court's discretion to refuse to grant leave to amend *sua sponte*. *Id.* ("[W]e will not upset the district court's dismissal with prejudice on the grounds that it failed *sua sponte* to give a [plaintiff]—who was represented by counsel—an opportunity to file an amended complaint."). Additionally, a court may dismiss a complaint without an opportunity to amend if "it is patently obvious that plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile." *Curly v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110). Here, the Court has already granted Plaintiff leave to amend her complaint as to her second claim. *See* ECF 21. Plaintiff's First Amended Complaint did not cure the original complaint's deficiencies, and Defendants' second motion to dismiss raises many of the same concerns as its first. *See* ECF 9. Therefore, the Court finds that granting leave to file a second amended complaint would be futile.

## IV. Supplemental Jurisdiction

Citing 28 U.S.C. § 1331, Plaintiff asserts that this Court has subject matter jurisdiction over her lawsuit because of the federal due process question, ECF 25, ¶ 2, but the Court now dismisses Plaintiff's due process violation claim. Thus, there is no federal question to support Section 1331 subject matter jurisdiction. And, because Plaintiff, who is a Colorado citizen, brings suit against other Colorado citizens, there is no complete diversity of citizenship to support federal subject matter jurisdiction under 28 U.S.C. § 1332 as an alternative. No party currently raises the issue of supplemental jurisdiction over the remaining state law claims. This is a jurisdictional question the Court must address.

Section 1367(c)(3) of 28 U.S.C. provides that a district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. *VDARE Found. v. City of Colo. Springs*, 449 F. Supp. 3d 1032, 1051 (D. Colo. 2020) (internal citation omitted). The Tenth Circuit has frequently approved the decision not to exercise supplemental jurisdiction over state claims after the dismissal of all federal claims. *E.g.*, *Strain v. Regalado*, 977 F.3d 984, 997 (10th Cir. 2020); *Hubbard v. Oklahoma*, 759 F. App'x 693, 713-15 (10th Cir. 2018); *Kinney v. Blue Dot Servs. of Kan.*, 505 F. App'x 812, 815 (10th Cir. 2012); *Dixon v. Sullivan*, 28 F. App'x 810, 813 (10th Cir. 2001); *Smith v. City of Enid ex. rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims.") (emphasis added). "'[N]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 2011)), *abrogated on other grounds by Torres v. Madrid*, 141 S. Ct. 989

11

(2021); *see also Kinney v. Blue Dot Serv. of Kan.*, 505 F. App'x 812, 814–15 (10th Cir. 2012) (affirming district court's decision to not exercise supplemental jurisdiction over state law claims when federal claims were dismissed).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim for three reasons. First, the Tenth Circuit expressed a preference for trial courts to decline the exercise of supplemental jurisdiction when all federal claims have been dismissed. *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'") (quotation omitted). That is the situation that this Order creates. There is the issue of whether the Court should rule on the remaining state law claim. However, as Chief Judge Brimmer has observed, "the parameters of the Court's discretion, if any, to exercise supplemental jurisdiction are far from clear." *Sisneros v. Taylor*, No. 09-cv-01646-PAB-MJW, 2011 WL 2292194, at *1 (D. Colo. June 8, 2011). That court recognized that there are Tenth Circuit decisions which "can be construed as finding that it can never be an abuse of discretion to *decline* to exercise supplemental jurisdiction." *Id.* at *1 n.4 (citing *Muller v. Culbertson*, 408 F. App'x 194, 197 (10th Cir. 2011)). Put differently, under such an understanding, "only the retention of jurisdiction can lead to claims of error. It is unclear, however, under what circumstances it would be an abuse of discretion to do so." *Id. Compare Jensen v. Reeves*, 3 F. App'x 905, 911 (10th Cir. 2001) (finding no abuse of discretion in exercise of supplemental jurisdiction over state claims when all federal claims had been dismissed) *with Sandberg v. Englewood, Colo.*, 727 F. App'x 950, 965 (10th Cir. 2018) (concluding "the district court erred by exercising jurisdiction over the state law claims after it had dismissed the federal

causes of action"). Given this uncertainty, the Court relies heavily on the abundance of cases holding that the presumption should be to *decline* the exercise of jurisdiction.

Second, "[t]he Court concludes that any potential delay or duplication resulting from a dismissal without prejudice does not constitute a compelling reason to retain jurisdiction." *U.S. v. Ledford*, No. 10-cv-01351-PAB-MEH, 2012 WL 1079552, at *3 (D. Colo. Mar. 30, 2012); *see also Hamilton v. Upper Crust, Inc.*, No. 10-CV-0718-CVE-PJC, 2011 WL 3880932, at *10 (N.D. Okla. Sep. 2, 2011) ("The Court finds that the Tenth Circuit's expressed preference for declining pendent jurisdiction outweighs the parties' slight interest in preventing delay."). Almost no proceedings other than this motion has been undertaken in this federal court, militating in favor of declining jurisdiction.

Third, "the Court notes that 'Colorado law recognizes if a plaintiff asserts all of his or her claims, including state law claims, in federal court, and the federal court declines to exercise supplemental jurisdiction over the state claims, the plaintiff may refile those claims in state court.'" *Ledford*, 2012 WL 1079552, at * 3 (quoting *Brooks*, 614 F.3d at 1230); *see also* 28 U.S.C. § 1367(d) (providing that the state's applicable statute of limitations "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period"). In other words, declining supplemental jurisdiction will not negate Plaintiff's ability to continue litigating the remaining claim.

Thus, the Court dismisses without prejudice the remaining state law claim for breach of contract. Plaintiff may refile it in Colorado state court. *See Thiess v. City of Wheat Ridge*, 823 F. App'x 682, 685-86 (10th Cir. 2020); *Hubbard*, 759 F. App'x at 714.

## CONCLUSION

Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint [filed September 6, 2022; ECF 26] is **granted**. Dunning's Section 1983 claims are dismissed without leave to amend. With regard to the merits of Plaintiff's remaining state law claim for breach of contract, it is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) for lack of supplemental jurisdiction. Plaintiff is permitted to refile her breach of contract claim in Colorado state court. The Clerk of Court shall close this case.

Entered and dated this 7th day of December, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge